IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

BENJAMIN RODRIGUEZ VAZQUEZ and
ANGELICA RIVERA SANDOVAL, and the
conjugal partnership integrated by both,

Plaintiffs

v.                                    CIVIL NO. 97-2509 (SEC-JAC)

HOSPITAL HERMANOS MELENDEZ, et al.,

Defendants

## OPINION AND ORDER

Defendant Hospital Hermanos Meléndez' Motion for Summary Judgment (D.E. #24) was duly opposed by plaintiff (D.E. #29) in this action filed under the Emergency Medical Treatment and Active Labor Act (EMTALA). Rule 56 of the Fed.R.Civ.P. and 42 U.S.C. §1395 et seq.

It is defendant's contention that plaintiff was not under active labor when she presented herself to the defendant Hospital Hermanos Meléndez.[1] Thus, the uncontroverted fact that plaintiff was transferred to the Bayamón Regional Hospital[2] because the day before her admission defendant had determined not to accept patients covered by the state government health plan[3] is not considered by defendant a violation of the federal provisions at issue.

---

[1] "The condition that brought Mrs. Rivera Sandoval to Hospital Hermanos Meléndez was not an emergency situation under EMTALA." Cited from defendant's Conclusion to the Motion for Summary Judgment, p. 7.

[2] The patient was taken by ambulance after having arranged the transfer with the Bayamón Regional Hospital where she thereafter delivered her baby.

[3] PCA of Puerto Rico was providing at the time the government of Puerto Rico Health Plan that allows health coverage for indigent or low income qualifying individuals.

Defendant submitted copy of the medical record resting on the assumption that the patient was not presenting an emergency at the time. The discussion on whether plaintiff was otherwise in active labor rests on a controverted record by staff nurses and disputed annotations that: first, the patient requested the transfer; second, she was found not in labor after consultation (seemly by telephone, since no physician appears certifying her medical condition nor subsequently approving the transfer as recorded); and third, the resulting fact that the delivery of a healthy baby in the Regional Hospital was uneventful. None of the defendant's premises are sustainable under EMTALA nor could properly be disposed by summary judgment because of genuine controversy of material facts.

The purpose of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990), reversed on other grounds 976 F.2d 77 (1st Cir. 1992). Thus, if the pleadings, depositions, answers to interrogatories, admissions and any affidavits on file show that there is no genuine issue as to a material fact, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

Where the moving party in summary judgment does not have the burden of proof at trial, that party must make a showing that the evidence is insufficient to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once this showing has been made, it is up to the nonmoving party to establish the existence of a genuine disagreement as to some material fact. United States v. One Parcel of Real Property, 960 F.2d 200, 204 (1st Cir. 1992). "Genuine" means that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a "material fact" is one

Civil No. 97-2509 (SEC-JAC)                              -3-

which "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Defendant Hospital Hermanos Meléndez submitted portions of the medical record and the sworn statement by Dr. Guillermo Faget Olivar. Plaintiff's sworn statements contest same to the effect that no physician at Hospital Hermanos Meléndez performed a pelvic examination to ascertain if she was in fact in labor. Dr. Faget's affidavit makes the assertion that he was informed by the nurse as to an examination, which is not substantiated by the hospital's medical record supplied. If anything, there is a controversy of facts on whether such a pelvic examination took place, who perform same and on which grounds the attending nurse provided information to Dr. Faget as to labor.

The annotation that the transfer was made upon request of the patient appears also controverted by annotations of attempts to call the PCA plan to verify and other efforts when informed that plaintiff was to be taken to the CDT of the area or to verify with Hospital Brenes for acceptance. See notes by registered nurse Ruth Torres. The patient had previously notified personnel upon arrival to Hospital Hermanos Meléndez that her water already broke and it was noted that contractions were considered up to moderate, 2-3 minutes apart[4]. Her attending gynecologist Dr. Guillermo Faget was never present at the defendant facilities, Hospital Hermanos Meléndez, and assisted delivery of the child once the patient had arrived to the Bayamón Regional Hospital.

---

[4] Plaintiff had four prior natural births.

Civil No. 97-2509 (SEC-JAC)                    -4-

Insofar as actions filed under EMTALA,[5] the statute was intended precisely to ensure that any individual with an emergency situation and/or in active labor be assessed and treated at any hospital which offers emergency services, regardless of their ability to pay. The provision addressed the existent practice of hospitals that participate in Medicare programs of patient dumping on public hospitals of those patients who are considered an economic loss without first providing appropriate medical screening to determine if an emergency condition exists and if so, to grant necessary stabilizing treatment and proper transport. 42 U.S.C. A. §1395 dd.

Plaintiff must show, to establish a violation of EMTALA, that the hospital is covered by the statute, the patient arrived at the hospital seeking treatment and either the hospital did not properly screen the patient or the hospital sent the patient away before stabilizing the problem. Alvarez Pumarejo v. Municipality of San Juan, 972 F.Supp. 86 (D.P.R. 1997).

The requirement of medical screening is to determine whether the person is suffering from an "emergency medical condition" or "active labor." It does not exclude the other as defendant's arguments regarding that labor is not to be labeled an emergency medical condition. If a woman is in active labor, the hospital where she presents herself is not permitted to transfer her unless under certain limited circumstances.

In Owens v. Nacogdoches County Hosp. Dist., 741 F. Supp. 1269 (ED Tex 1990), a hospital was determined engaged in patient dumping in violation of EMTALA by directing the plaintiff in labor to present herself to another hospital when she was experiencing labor pains.

---

[5] In enacting the Emergency Medical Treatment and Active Labor Act (EMTALA) Congress did not intend to create a federal malpractice statute. Still, it is not addressed solely to indigent patients who are denied treatment or screening as required. See Marshall v. East Carroll Parish Hospital Service District, 134 F.3d 319 (5th Cir. 1998); Correa v. Hospital San Francisco, 69 F.3d 1184 (1st Cir. 1995); Cleland v. Bronson Health Care Group, Inc., 917 F.2d 266 (6th Cir. 1990).

Civil No. 97-2509 (SEC-JAC)                -5-

The transfer ordered was also held inappropriate under the circumstances regardless of the benefit that the transferee hospital had a neonatal unit and better facilities for a risk pregnancy. Likewise in Thompson v. St. Anne's Hospital, 716 F.Supp. 8 (ND Ill. 1989).

Insofar as adequate medical screening, a departure from standard screening procedure, at issue in the instant case, would also constitute inappropriate screening in violation of EMTALA. Romo v. Union Memorial Hosp., 878 F.Supp. 837 (WD NC 1995). When facts issues exist on whether a patient was stabilized before transfer and whether the patient was transferred improperly in an EMTALA claim, summary judgment is not an appropriate disposition. Howe v. Hull, 874 F.Supp. 779 (ND Ohio 1994).

Furthermore, a woman has been considered to be in "active labor" not only when childbirth is imminent, but when there are questions of whether there is sufficient time for a transfer and whether such transfer poses an undue risk to the mother or the child. In Owens, supra, the woman did not give birth to the child in the transferred hospital until four (4) days later, but was found to be in "active labor" since the first time she arrived at the defendant hospital. In any event, labor remains a clinical diagnosis that comprises a complex physiologic process involving fetal and placental, as well as maternal, signals. When issues of active labor are in controversy by the medical record and available testimonies, these need to be assessed with the assistance of a qualified expert, and hardly by way of summary judgment.

The interpretation by the Court of Appeals for the First Circuit states that "it cannot be gainsaid that, in enacting EMTALA, Congress was driven by a concern that hospitals were refusing to admit and treat uninsured patients." See H.R.Rep. No. 99-241(I), at 27 (1986),

Civil No. 97-2509 (SEC-JAC)                    -6-

reprinted in 1986 U.S.C.C.A.N. 579, 605. López-Soto v. Hawayeck, M.D., 175 F.3d 170 (1st Cir. 1999).

This magistrate finds that the defendant Hospital Hermanos Meléndez has not fulfilled the summary judgment requirements insofar as that there is no genuine issues of material facts as to plaintiff's claims under EMTALA or the pendent state claim which remains discretionary within our boundaries.

**WHEREFORE**, defendant's Motion for Summary Judgment is hereby **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, November 22, 1999.

J. ANTONIO CASTELLANOS
UNITED STATES MAGISTRATE JUDGE